IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEFFREY DAVIS, | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 17-708 |
| | § | |
| AIG PROPERTY CASUALTY COMPANY | § | |
| and AARON CAMP, | § | |
| *Defendants.* | § | JURY DEMANDED |

PLAINTIFF'S OPPOSED MOTION TO REMAND

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Court should remand this case back to the 424th Judicial District Court of Llano County, Texas, because the Court lacks subject matter jurisdiction under 29 U.S.C. §1332 (a) as complete diversity of citizenship between the parties is lacking. Defendant AIG Property Casualty Company ("AIG") removed this case to this Court on the sole basis that the Plaintiff fraudulently joined Aaron Camp ("Camp")—a Texas citizen and resident—to this suit in order to avoid the subject matter jurisdiction of this Court. However, AIG cannot meet its heavy burden of establishing improper joinder because Plaintiff asserted at least one cause of action against Camp.

Moreover, in the context of a motion to remand, the split in authority regarding the scope of an insurance adjuster's liability under the Texas Insurance Code must be resolved in favor of remand.

## I. FACTS

1. The causes of action that form the basis of this lawsuit arise out of Plaintiff's insurance claim for damage to his property caused by a hail and windstorm. Plaintiff made a claim for damages to his property under the insurance policy issued by AIG. AIG assigned Camp, an

independent adjuster, to investigate Plaintiff's claim. Camp inspected the property on or around June 7, 2016, and prepared an estimate representing the exterior damages could be repaired for $64,735.98. Ex. A—Def.'s DTPA Response, 1. Camp did not estimate the cost of interior repairs at that time due to the complexity of the custom design and quality of the materials. *Id.*

2. On September 29, 2016, Camp re-inspected the property with Plaintiff's contractor. *Id.* On October 6, 2016, based on Camp's inspections and adjustment of the claim, AIG notified Plaintiff that AIG would not pay for the water damage to the columns on the rear porch, alleging the damage was long-term and, therefore, not covered under the policy. *Id.* AIG and Camp then retained the engineering firm EFI Global to investigate the cause of damage to the columns on the rear porch. *Id.* Predictably, EFI Global confirmed Camp's initial determination that the damage to the rear columns was not covered under the policy. *Id.* AIG then sent a partial denial letter to Plaintiff asserting the damage to the rear porch columns and porch structure occurred over a period of time and that type of damage is excluded from the policy. *Id.* AIG advised Plaintiff that AIG's adjuster, Camp, would continue to work with Plaintiff to "get a final agreed repair cost for the interior water damage." Ex. B—Email from Donna Jones, Prop. Claim Analyst, to Jeff R. Davis, Plaintiff (Nov. 17, 2016, 10:25 AM CST) (on file with Plaintiff).

3. On January 17, 2017, Plaintiff provided Defendant with an estimate from Plaintiff's contractor to repair the covered damage and requested AIG issue a supplemental payment to cover the losses. Ex. C—Email from Jeff R. Davis, Plaintiff, to Donna Jones, Prop. Claims Analyst (Jan. 17, 2017, 10:07 AM CST) (on file with Plaintiff). Plaintiff's estimate totaled $230,101.37. Ex. D—Bellweather Co. Est. Defendant did not respond. On February 7, 2017, Plaintiff inquired again about the supplemental payment for covered damages. Ex. E—Email from Jeff R. Davis, Plaintiff, to Donna Jones, Prop. Claims Analyst (Feb. 7, 2017, 11:04 AM CST) (on file with Plaintiff). That

same day, Defendant responded it was retaining a building expert to evaluate the contractor's estimate because it exceeded $100,000.00. Ex. A, at 2. Defendant retained Rick Whitworth ("Whitworth") of Young & Associates, to inspect the property. *Id.* Whitworth inspected the property on February 21, 2017, with Plaintiff's contractor, Bellweather Co. *Id.* On or around March 6, 2017, Whitworth prepared an estimate representing the covered storm damage could be repaired for $108,523.60. *Id.*

4. On March 23, 2017, Defendant forwarded Whitworth's estimate to Plaintiff. *Id.* On March 29, 2017, Plaintiff responded that he disagreed with the estimate and directed Defendant to forward "whatever monies you currently believe are owed to us." *Id.* AIG's adjuster, Camp, adjusted Plaintiff's claim based on Whitworth's new estimate and Defendant issued payment for an additional $42,787.62, the balance after accounting for Plaintiff's deductible of $20,225.00 and a prior payment of $45,510.98. *Id.* However, Camp's adjustment improperly depreciated services-to-be-performed, such as floor protection and masking lights and speaker fixtures prior to repairing the interior. Ex. F—Whitworth Estimate, at 4. This was improper because services-to-be-performed do not depreciate and, therefore, should not be depreciated in the estimate.

5. Additionally, Plaintiff advised AIG and Camp that Plaintiff intended to hire the contractor that performed all prior repairs on Plaintiff's home, yet Camp refused to fully pay for the cost of repairs. Camp's refusal to pay is improper because it is indisputable that a policy holder has a right to select his own contractor and Plaintiff prudently chose the contractor who performed all prior repairs.

6. Moreover, it was Camp's initial adjustment and denial of coverage for damage to the rear columns that prompted AIG to hire an engineer to confirm Camp's adjustment. Ex. A, at 2. AIG then hired an engineer, EFI GLOBAL, to provide Defendants with a favorable opinion as a

pretext to deny payment for covered damage to the rear porch columns. EFI Global inspected the property on November 2, 2016, almost (9) months after the April 12, 2016 storm at issue. Ex. G—EFI Global Report, at 3. EFI Global concluded the damage to the rear porch columns is the result of "long-term (months to years) exposure to moisture and is not the result of a one-time weather event." *Id.* at 4. EFI Global does not explain why the record-breaking storm that damaged the roof, necessitated roof replacement, and caused interior leaks, *see* Ex. F, at 2-4 (allowing for full roof replacement and repairs to Entry/Foyer), did not also damage the structure and allow the top of the rear porch columns to be exposed to moisture for eight-plus (8) months. Rather, EFI Global simply concluded the damage to the rear porch columns is "not the result of a one-time weather event." *Id.* at 5. Additionally, EFI Global's blanket-conclusion that the damage to the columns was long-term damage is suspect considering the engineer's photos demonstrate the decking and supports are relatively new and the metal fasteners do not exhibit rust or other damage that would accompany long-term exposure to water. *See* Ex. G, at 14 (demonstrating water damage to supports and decking but fastener looks pristine). Camp orchestrated the denial of substantial covered damage by hiring EFI Global to provide Defendants with a favorable opinion. Neither AIG nor Camp are insulated from liability simply by hiring biased experts. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448-49 (Tex. 1997) (explaining an insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable) (*citing Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993)).

7. Camp performed an outcome-oriented investigation intended to deprive Plaintiff of the full amount of policy benefits. AIG and Camp retained an engineer knowing the engineer would produce a report favorable to AIG, which Camp would then use as a pretext to deny coverage for

the columns on the rear porch. Camp also retained a building expert, Whitworth, who wrote an estimate that failed to allow for the full extent of repairs and improperly depreciated services-to-be-performed. Ex. F, at 4. Camp represented to AIG, who then represented to Plaintiff, that the covered storm damage could be fully and properly repaired for $108,523.60. This was false because Camp's adjustment under-estimated the cost for various necessary repairs, such as replacing the gutters. *Compare* Ex. D, at 1 (estimating gutter repairs will cost $12,650.00), *with* Ex. F, at 3 (estimating gutter repairs will cost $9,424).

8. Camp failed to properly adjust the claim, which caused Defendant to under-compensate Plaintiff on his insurance claim. Plaintiff sent Defendant a Demand Letter on April 11, 2017, and asked Defendant to properly pay for covered loss. Defendant failed to cure its defective adjustment of Plaintiff's claim. As a result, Plaintiff was forced to bring suit against AIG and Camp for damages resulting from the mishandling of his insurance claim and for unfair settlement practices.

9. Plaintiff filed suit on July 22, 2017, in the 424th Judicial District Court of Llano County, Texas. AIG removed this case to this Court on July 26, 2017, alleging that this Court has subject matter jurisdiction because Camp was improperly joined in the lawsuit to defeat diversity jurisdiction. To the contrary, Camp was properly joined in this lawsuit, and because he is domiciled in and a citizen of Texas, this Court lacks subject matter jurisdiction.

## II. ARGUMENTS AND AUTHORITIES

10. The party invoking a court's removal jurisdiction bears the burden of establishing and proving federal jurisdiction. *See Manguno v. Prudential Property and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001); *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997). Thus, the burden of proving complete

diversity exists rests upon AIG who seeks to invoke the Court's diversity jurisdiction. *See Pospisil v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991). The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank*, 128 F.3d at 922; *Manguno*, 276 F.3d at 723.

11. In evaluating the propriety of removal, this Court must evaluate all factual allegations in the light most favorable to Plaintiff, resolve all contested issues of fact in favor of Plaintiff, and resolve all ambiguities of controlling state law in favor of Plaintiff. *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995); *see also Manguno v. Prudential Pro. And Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (explaining "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand") (*citing Acuna v. Brown & Root*, *Inc.*, 200 F.3d 35, 339 (5th Cir. 2000)).

## A. REMAND IS NECESSARY BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE

12. This Court lacks subject matter jurisdiction over this case because there is not complete diversity of citizenship between the parties since Camp is a citizen and resident of Texas. AIG cannot meet its heavy burden to prove, as it must, that Camp was improperly joined as a defendant in this case for the sole purpose of depriving the federal court of jurisdiction.

13. Camp was not improperly joined in this case because the facts alleged in Plaintiff's Original Petition are sufficient to establish at least one valid cause of action, if not multiple causes of action, against Camp. AIG simply has not met its burden of proving Plaintiff has no valid cause of action against Camp. Therefore, this case is not removable pursuant to 28 U.S.C. §1332, 28 U.S.C. §1441 or 28 U.S.C. §1446 and the Court should remand this case to district court. *See*

*Mayes v. Rapoport*, 198 F.2d 457, 461 (4th Cir. 1999).

### *1. AIG Has Not Met Its Heavy Burden to Establish Improper Joinder*

14. A claim of fraudulent joinder must be pleaded with particularity, supported by clear and convincing evidence, and proven with certainty. *Mayes,* 198 F.2d 457, 461. "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving joinder was improper." *Smallwood v. Illinois Central RR. Co.,* 385 F.3d 568, 576 (5th Cir. 2004). The court lacks subject matter jurisdiction when the removing party does not meet this burden. *Id.*

15. To show joinder is improper, the removing party must prove that there is no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant or that the plaintiff engaged in outright fraud in pleading jurisdictional facts. *Id.* at 573; *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205-6 (5th Cir. 1983); *Landor v. Stillwater Lloyds,* 2013 WL 1746003 at *2 (N.D. Tex., Apr. 23, 2013). When no fraud is alleged, "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Landor*, 2013 WL 1746003 at *2; *Smallwood,* 385 F.3d at 573; *Fields v. Pool Offshore, Inc.,* 182 F.3d 353, 357 (5th Cir. 1995). In *Landor*, the court stated that the "unfair and deceptive acts" that plaintiff alleged against defendant adjuster, "if true, would create a reasonable possibility that Plaintiff could prevail on at least one of her claims." *Landor,* 2013 WL 1746003 at *2.

16. In *Smallwood*, the Fifth Circuit stated that ordinarily these matters should be decided by simply asking if the complaint states at least one cause of action under state law. *See Smallwood*, 385 F.3d at 573. The court kept open the possibility that a court may pierce, or go beyond the

pleading, but cautioned that those cases should be "few in number." *Id.* Additionally, the examples given of appropriate classes of cases to "pierce" the pleadings are indicative of the types of disputes the court had in mind. The court held that a summary inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. The allegations contained in Plaintiff's Original Petition are disputed questions of fact, which must be decided by the fact finder. AIG did not provide any evidence of discrete or undisputed facts in their Notice of Removal that would preclude Plaintiff's recovery against Camp.

17. The question before this Court is simply whether at least one of the causes of action Plaintiff asserted against Camp are supported by the facts alleged and the laws of Texas. *Chesapeake & Ohio Ry. v. Cockrell*, 232 U.S. 146, 153 (1914). Thus, the question of improper joinder is a function of whether Plaintiff has pled a potentially viable cause of action against Camp under Chapter 541 of the Texas Insurance Code. *See, e.g., Davis v. Travelers Lloyds of Texas Insurance Co.*, 2009 WL 3255093, at *4 (S.D.Tex., Sept. 29, 2009) ("The issue of improper joinder hinges on whether the plaintiff can establish any potentially viable state-law cause of action against [the Adjuster]"). It is irrelevant to the Court's analysis whether the Plaintiff has also pled valid and similar, or even the same, causes of action against AIG in this case, particularly if both Defendants can be liable for the same conduct, as is the case here. Simply put, if Plaintiff has pled a potentially viable cause of action against Camp, without regard to the pleadings and causes of action as to AIG, then Camp has not been improperly joined and this Court lacks jurisdiction over this case.

18. The court in *Smallwood* granted the plaintiff's motion to remand after the court struck down arguments identical to those of AIG when it found controlling the fact that the plaintiff attributed conduct to the adjuster that it did not attribute the defendant insurance company. *See*

*Smallwood*, 385 F.3d at 573. The allegations referred to in *Smallwood* are nearly identical to the conduct in which Plaintiff alleges Camp engaged. In *Plaintiff's Original Petition*, Plaintiff alleged that Camp—the adjuster assigned to Plaintiff's claim—conducted a substandard investigation and inspection of the property, prepared a report that failed to include all the damage he noted during the inspection, and undervalued the damages observed during the inspection. Pl.'s Original Pet., June 22, 2017, at 3. Plaintiff alleged Camp improperly depreciated services required for repairs to the Entry/Foyer, such as floor protection and masking lights and speaker fixtures. *Id.* This was improper because services-to-be-performed do not depreciate and, therefore, should not be depreciated in Camp's adjustment. *Id.* Plaintiff alleged Camp's unreasonable investigation led to the underpayment of Plaintiff's claim. *Id.* at 4.

19. Plaintiff provided specific facts regarding Camp's improper adjustment and violations of Texas Insurance Code section 541. For example, Plaintiff alleged that Camp improperly depreciated services-to-be-performed, such as protecting the interior prior to painting. *Id.* at 3. Additionally, Plaintiff alleged that on June 12, 2016, Camp produced an estimate representing the covered damages could be properly repaired for a mere $64,735.98. *Id.* at 7. Plaintiff alleged Camp's estimate was incorrect because Plaintiff's contractor estimated the cost to repair the covered damage exceeds $230,000.00. *Id.* Plaintiff attached his contractor's estimate to the Petition. Plaintiff also alleged Camp should have known the damage to the columns was the result of a covered, fortuitous event, rather than long term rot and deterioration, because the storm at issue was widely reported and it is not possible for those types of columns to have long-term damage. *Id.* Plaintiff alleged Camp committed various acts and omissions violative of the Texas Insurance Code, including performing an incomplete inspection, failing to inspect all areas, undervaluing damages, allowing inadequate funds for repairs, and setting out to deny properly

covered damages. *Id.* at 8. Plaintiff alleged this conduct of Camp resulted in the underpayment to Plaintiff, as well as delayed Plaintiff's ability to fully repair the home. *Id.*, at 8. Plaintiff alleged Camp's conduct violated sections 541.051 and 541.061 of the Texas Insurance Code. *Id.*

20. Plaintiff properly alleged at least one valid state law cause of action, if not multiple, against Camp. Therefore, following the reasoning of *Smallwood*, this Court should conclude Camp has been properly joined to this lawsuit and grant Plaintiff's Motion to Remand.

### ***2. Plaintiff Alleged a Valid Cause of Action Against Camp Under the Texas Insurance Code***

21. Plaintiff only has to establish one valid cause of action against Camp to disprove fraudulent joinder. Here, Plaintiff alleged a valid cause of action for violations of the Texas Insurance Code. Chapter 541, Subchapter A of the Texas Insurance Code, prohibits any "person" from engaging in deceptive practices in the business of insurance. *See* TEX. INS. CODE. ANN. §541.003 (2005). The term "person" is defined as "any *individual*, corporation, association, partnership, ... and any other legal entity engaged in the business of insurance, including agents, brokers, *adjusters* and life insurance counselors." TEX. INS. CODE. ANN. §541.002 (2005) (emphasis added). Thus, §541.002 specifically provides that the definition of "person" includes claims adjusters such as Camp, and Chapter 541, Subchapter A, provides a private cause of action against any person that engages in unfair or deceptive acts as provided in section 3 of the subchapter. *See* TEX. INS. CODE. ANN. §541.003 (2005).

22. When a plaintiff has a viable claim under sections 541.051, 541.060 and 541.061 of the Texas Insurance Code against an adjuster, he or she is entitled to remand. *See Smith-Manning v. Stillwater Lloyds*, 2013 WL 5637539, at *2 (N.D. Tex., Oct. 14, 2014); *Gray v. Beverly Enterprises—Mississippi, Inc.*, 390 F. 3d 400, 412 (5th Cir. 2004). Even if Plaintiff only has a

single valid cause of action against an adjuster, this Court is required to remand the entire case to state court. Plaintiff's allegations against Camp are sufficient to establish a valid cause of action under the Texas Insurance Code.

23. In *Garrison Contractors,* the Texas Supreme Court specifically held that, under Texas law, the term "person" as defined in Chapter 541, Subchapter A of the Texas Insurance Code (formerly Article 21.21), is not limited to insurers; rather, it also includes individual *agents*. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486-87 (Tex. 1998). While this case is about *adjusters* instead of agents, the analysis under *Garrison Contractors* is no different because the same definition of "person" under the Texas Insurance Code also specifically lists and applies to *adjusters*. The term "person" for the purpose of liability, includes individuals and company employees who are engaged in the business of insurance, "including agents, brokers, *adjusters* and life insurance counselors." *See* TEX. INS. CODE. ANN. §541.002 (2005). Thus, the wrongful conduct of an insurance adjuster gives rise to that individual's personal liability, despite the adjuster's "subordinate" relationship with the insurance carrier as its employee.

24. Following the guidance of the Texas Supreme Court in *Garrison,* the Fifth Circuit held an adjuster can be held liable under the Texas Insurance Code under Texas law. *See Gasch v. Hartford,* 491 F.3d 278, 282 (5th Cir. 2007) (explaining Texas law clearly authorizes causes of action against insurance adjusters). Thus, AIG's basis for removal is groundless and completely ignores precedent from the Texas Supreme Court and the Fifth Circuit holding that an adjuster can be held liable under Chapter 541 of the Insurance Code.[1] Based upon the foregoing, Camp is a "person" who is potentially liable under the Texas Insurance Code for his unfair settlement

[1] Defendant Camp is not a nominal party to Plaintiff's lawsuit and can be held personally liable under the Texas Insurance Code for his Insurance Code Violations in Plaintiff's case. *See* TEX. INS. CODE. ANN. §541.003 (2005); *Garrison Contractors,* 966 S.W.2d at 484.

practices. *See Gasch*, 491 F.3d at 282; *Garrison Contractors*, 966 S.W.2d at 486-87. Camp was properly joined because Plaintiff has valid causes of action against him under the Texas Insurance Code for unfair settlement practices in his role as the adjuster on Plaintiff's insurance claim. It is undisputed by the parties that Camp was the insurance adjuster assigned to Plaintiff's claim. Because Camp is an adjuster in the business of insurance, and he was the adjuster assigned to Plaintiff's claims, Camp can be held individually liable to the Plaintiff for his violations of the Texas Insurance Code.

25. AIG asserts the Court should conclude Camp was improperly joined because Plaintiff's allegations against Camp "are nearly parallel and therefore equally vague and conclusory" to the facts in *Plascencia*. Def.'s Notice of Removal, at 5. Defendant's assertion is simply incorrect. As explained above, Plaintiff pleaded specific facts regarding Camp's improper adjustment.[2] Plaintiff provided the "who", "what", and "when" regarding Camp's improper adjustment of Plaintiff's claim: "who"—Camp, "what"—misrepresented cost of repairing covered damages, "when"—on June 12, 2016. These are specific allegations of misconduct under the Texas Insurance Code and these allegations are sufficient to apprise Camp of the allegations against him. Texas law supports imposing liability on an insurance adjuster for his misconduct in the handling of an insurance claim.

26. Defendant alleges there is a "growing body of authority" finding improper joinder when factual allegations against them fail to fit the criteria for an actionable claim under the Texas Insurance Code and, therefore, fail to provide fair notice of any claim. Def.'s Notice of Removal,

---

[2] Plaintiff alleged: on June 12, 2016, Aaron Camp produced an estimate representing that covered damages could be properly repaired for a mere $64,735.98. This was false because the cost to repair the covered damage exceeds $230,000.00. Pl.'s Original Pet., at 7.

at 7. Defendant cites *One Way Investments*[3] for support. *Id.* at 6. However, *One Way Investments* was primarily based on *Messersmith*,[4] an opinion that has been criticized by a fellow judge in the same Dallas Division. *See Roach v. Allstate Vehicle & Prop. Ins. Co.*, 2016 WL 797967 (N.D. Tex., Feb. 29, 2016) (granting remand and explaining *Messersmith* and *One Way* unduly narrow the scope of § 541.050(a)(2)). In fact, the Southern District of Texas recently remanded a case *sua sponte* upon finding an insurance adjuster may face individual liability under Texas Insurance Code section 541.060(a)(2). *Olivo v. Certain Underwriters at Lloyd's, London Subscribing to Policy No. GGA1001013, et. al.*, No. 4:15-CV-2131, 2016 WL 7742786 *2 (S.D. Tex. July 8, 2016) (siding with the court in *Roach* and rejecting the opinion in *Messersmith*).

27. A recent case out of this Northern District of Texas demonstrates why Camp was properly joined. *Linron Prop's, Ltd. v. Wausau Underwriters Ins. Co.*, No. 3:15-CV-00293-B, 2015 WL 3755071 (N.D. Tex., June 16, 2015) (Boyle, J.). In *Linron*, the Plaintiff brought suit against the insurer and insurance adjuster for the improper handling of an insurance claim. *Id.* at *1. Plaintiff asserted a claim against the adjuster for violating various provisions of Chapter 541 of the Texas Insurance Code, including for "'failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim,' as well as for civil conspiracy." *Id.* at *3. The defendant in *Linron*—as in this case—argued plaintiff's allegations were mere conclusory statements and, therefore, insufficient to state a viable claim against the adjuster. *Id.* The Court noted that, while the abundance of case law supports adjuster liability under §541.060, some courts have recently begun to question the appropriateness of holding an adjuster individually liable for unfair settlement practices under §541.060. *Id.* at *4. The Court examined the language in

[3] *One Way Investments, Inc. v. Century Surety Co., et. al.*, No. 3:14-CV-2839—D (N.D. Tex., Dec. 11, 2014).
[4] *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 3:13-CV-4101-P, 2014 WL 1347872 (N.D. Tex. Apr. 7, 2014).

§541.060(a)(2)(A), which prohibits those engaged in the business of insurance from "failing to *effectuate* a prompt, fair, and equitable settlement." *Id.* at *5 (quoting TEX. INS. CODE. ANN. §541.060(a)(2)(A) (emphasis added)). The Court concluded the statute's use of "the word 'effectuate' rather than a word that conveys finality (e.g., finalize), suggests that its prohibition extends to all persons who play a role in bringing about a prompt, fair, and equitable settlement of a claim." *Id.* The Court held an adjuster's insufficient investigation may well lead to a "less than fair settlement of a claim" and remanded the case because Defendant failed to establish there was no reasonable basis to predict Plaintiff could recover against the adjuster. *Id.* at *5. *See Simmons v. Northfield Ins. Co.*, No. 4:15-CV-374, 2015 WL 5162369, at *5 (E.D. Tex. Sept. 2, 2015) (remanding case because plaintiff's allegations were sufficient to support a claim against the insurance adjuster in his individual capacity for violating § 541.010(a)(2)(A) of the Texas Insurance Code).

28. Here, Camp was the person primarily responsible for investigating and evaluating the Plaintiff's claim, and he unquestionably had the ability to effect or bring about the "prompt, fair, and equitable settlement" of Plaintiff's claim, because it is upon his investigation that AIG's settlement of the claim is generally based. *See Linron*, 2015 WL 3755071, at *5 (remanding the case because the in-state defendant adjuster could be held liable for his conduct under the Texas Insurance Code). Camp conducted an unreasonable investigation that failed to include many of Plaintiff's damages, orchestrated an inspection by a biased expert as a pretext to deny coverage for Plaintiff's rear porch columns, hired a biased building contractor to provide a low-ball cost of repairs, and Camp's decisions and adjustment of Plaintiff's claim ultimately resulted in an unfair settlement of Plaintiff's claim.

29. The Texas Supreme Court, Fifth Circuit, and Northern District all recognize an insurance adjuster can be held liable under the Texas Insurance Code.[5] Indeed, the *Linron* decision explains the majority of Texas case law supports holding an adjuster liable for his conduct under the Texas Insurance Code. *Linron*, 2015 WL 3755071, at *5. Camp is a proper defendant in this case because he is the assigned adjuster, who engaged in the business of insurance, and violated the Texas Insurance Code § 541.060.

### 3. *Plaintiff's Factual Allegations Against Camp Are Sufficient to Support a Cause of Action*

30. Plaintiff's allegations against Camp and Plaintiff's Original Petition contain more than sufficient factual allegations against Camp to establish a "factual fit" between Plaintiff's allegations and at least one valid cause of action against Camp under the Texas Insurance Code. Plaintiff's factual allegations against Camp include, but are not limited to, the following: that Defendant Camp was Defendant's adjuster, Pl.'s Original Pet., at 3, Camp conducted an outcome-oriented investigation in which Camp knowingly misrepresented the true scope of damage and

[5] *See Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1998) (holding the adjustment of claims and losses qualifies as the business of insurance, thus making an adjuster a "person" under the Insurance Code); *Gasch*, 491 F.3d at 282 (5th Cir. 2007); *Winterrowd v. Allstate Vehicle and Prop. Ins. Co.*, No. 4:17-CV-00110-ALM-CAN, 2017 WL 1370768, at *5-6 (E.D. Tex. March 25, 2017) (remanding case because Plaintiff alleged specific facts regarding the adjuster's improper adjustment); *Richard v. Geovera Spec. Ins. Co., et. al.*, No. 4:16-CV-2496, 2016 WL 6526538, at *5 (S.D. Tex. Nov. 3, 2016) (acknowledging split in authority on adjuster liability and remanding because "ambiguities are construed against removal and in favor of remand to state court"); *Shade Tree Apartments, LLC v. Great Lakes Reinsurance (UK) PLLC*, No. A-15-CA-843-SS, 2015 WL 8516595, at *6 (W.D. Tex. Dec. 11, 2015); *Denley Grp., LLC v. Safeco Ins. Co. of Ind.*, No. 3:15-CV-1183-B, 2015 WL 5836336, at *4 (N.D. Tex. Sept. 30, 2015); *Esteban v. State Farm Lloyds*, 23 F. Supp. 3d 723, 729-31 (N.D. Tex. 2014) (concluding Plaintiff could make out a claim against the independent adjuster based on alleged violations of the Texas Insurance Code); *Lopez-Welch v. State Farm Lloyds*, No. 3:14-CV-2416-L, 2014 WL 5502277, at * 8 (N.D. Tex. Oct 31, 2014); *Progressive Island, LLC v. Socctsdale Ins. Co.*, No. 3:13-CV_0741-M, 2013 WL 606514, at @2-3 (N.D. Tex. Nov. 18, 2013); *Shioleno Indus. Inc. v. Liberty Mut. Fire Ins. Co.*, No. 3:11-CV-0971-O-BK, 2012 WL 176572, (N.D. Tex. Jan. 6, 2012) (granting remand because Plaintiff's allegations provided sufficient factual allegations under Texas's fair notice standard for recovery against defendant adjuster); *Yelldell v. GeoVera Specialty Ins. Co.*, 2012 WL 5451822, at *4 (N.D. Tex. Nov. 8, 2012) (remanding because the Court could not conclude there was *no reasonable basis* to predict Plaintiff might recover under at least one cause of action asserted against the defendant adjuster) (emphasis original); *Leisure Life Senior Apartment Hons. II, Ltd. v. Lloyds of London*, No. CIV. A H-09-3067, 2009 WL 3834407, at *2 (S.D. Tex. Nov. 12, 2009); *Shipley v. Nat'l Fire Ins. of Hartford*, No. 3:95-CV-0972-BC, 1998 WL 355493, at *3 (N.D. Tex. June 25, 1998).

cost of repair, *id.*, Camp overlooked or ignored widespread obvious wind and hail damage, *id.*, that he improperly depreciated services that do not depreciate, *id.*, that Camp misrepresented it would cost $64,735.98 to properly repair the covered damage, *id.* at 7, Camp knowingly misrepresented the cause of damage to the columns, *id.*, and Camp's actions resulted in the underpayment of Plaintiff's claim. *Id.* at 8.

31. The above and foregoing factual allegations "fit" with causes of action for violation of the Texas Insurance Code §§541.060(a)(1), §541.060(a)(2)(A), §541.060(a)(3), §541.060(a)(4), and §541.060(7). Causes of Action Plaintiff alleged against Camp. *Id.* at 8-9. Further, Plaintiff alleged in his Original Petition that Camp violated section 541.051 of the Texas Insurance Code by making various material misrepresentations to Plaintiff, failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, and failing within a reasonable time to affirm or deny coverage. *Id.*

32. Based upon the foregoing factual allegations, Plaintiff has without question met his burden to identify with facts the manner in which he alleges Camp violated the law. Plaintiff pleaded specific facts of specific instances where Camp misrepresented to Plaintiff the amount of damage to the property and the cost of repairing the damaged property. Defendant's claim that Plaintiff's allegations are conclusory is simply false.

33. Indeed, other courts in this district have found similar allegations to be sufficient to state a claim for violations of the Texas Insurance Code. *Olivo*, 2016 WL 7742786 *2; *Richard*, 2016 WL 6526538, at *5; *Leisure Life Senior Apartment Hons. II, Ltd.*, 2009 WL 3834407, at *2.

34. Regardless, "in the context of a motion to remand, the split in authority regarding the scope of an insurance adjuster's liability under the Tex. Ins. Code must be resolved in favor of

remand. *Roach*, 2016 WL 795967, at *6 (*citing African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (holding "any ambiguities of state law must be resolved" in favor of remand); *see also Hood ex rel. Miss. V. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013).

35. The possibility certainly exists that Plaintiff will be able to establish violations of the Texas Insurance Code against Camp. Whether Plaintiff is ultimately able to prove Camp engaged in the alleged conduct goes to the merits of the claim and is not the issue before the Court. Defendant must prove there is "absolutely no possibility that [Roach] will be able to establish a cause of action against the in-state defendant." *Linron*, 2015 WL 3755071, at *5. AIG does not, and cannot, meet the heavy burden of proving that joinder of Camp was improper. Removal, therefore, is improper and this Court must remand this case to county court.

## IV. CONCLUSION

The Court should remand this case to the 424th Judicial District Court of Llano County, Texas. Federal jurisdiction under 28 U.S.C. §1332 requires the removing party to state facts showing a complete diversity of citizenship. AIG's conclusory statements and argument that Camp has been improperly joined do not satisfy those requirements. Furthermore, AIG is unable to meet the heavy burden to prove that there is absolutely no possibility that Plaintiff could establish a cause of action against Camp. Therefore, removal is improper.

Respectfully submitted,

By: ______________________________

DOUGLAS E. PENNEBAKER, *Attorney-in-charge*

State Bar No. 00788178; Federal Bar No. 23238
PENNEBAKER LAW FIRM
A Professional Corporation
1045 Cheever Blvd., Suite 103
San Antonio, Texas 78217
Telephone: (210) 562-2888
Telecopier: (210) 562-2880
doug@pennebakerlaw.com

## CERTIFICATE OF CONFERENCE

This is to certify that counsel for Plaintiff attempted to confer with counsel for Defendant on August 24, 2017, regarding the substance of this Motion to Remand but, as of the time of filing, the parties did not have an agreement.

DOUGLAS E. PENNEBAKER

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following counsel of record in compliance with the Federal Rules of Civil Procedure on August 24, 2017:

Jennifer M. Kearns
THOMPSON, COUSINS, COE & IRONS, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
(512) 703.5042 (Telephone)
(512) 708.8777 (Facsimile)
jkearns@thompsoncoe.com
**ATTORNEY FOR DEFENDANTS,**
**AIG PROPERTY CASUALTY COMPANY and**
**AARON CAMP**

DOUGLAS E. PENNEBAKER,
*Attorney-in-charge*
State Bar No. 00788178;
Federal Bar No. 23238